Filed 10/24/24  Buttner v. Imperial Irrigation District CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| ANNETTE BUTTNER, | D082096 |
| Plaintiff and Appellant, |  |
| v. | (Super. Ct. No. ECU002686) |
| IMPERIAL IRRIGATION DISTRICT, |  |
| Defendant and Respondent. |  |

APPEAL from an order of the Superior Court of Imperial County, Jeffrey Bruce Jones, Judge.  Affirmed.

Annette Buttner, in pro. per.; Gomez Trial Attorneys and Rachel M. Garrard, for Plaintiff and Appellant.

Law Office of Rick Schneider and Richard J. Schneider; Law Office of Johanna S. Schiavoni and Johanna S. Schiavoni, for Defendant and Respondent.

Plaintiff and appellant Annette Buttner appeals from an order denying her permission to file a late government tort claim against defendant and

respondent Imperial Irrigation District (District). (Gov. Code,[1] § 946.6, subd. (a).) She contends the court abused its discretion because her attorney's declaration provided "evidence of [his] many attempts to file an appropriate claim and his erroneous but reasonable assumption that [District] was an agency of the State." We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a November 30, 2021 traffic accident in which a District employee, driving a District vehicle, collided with an Imperial County Sheriff's Department vehicle that was transporting Buttner.[2]

On December 17, 2021, Buttner retained attorney Justin Kashou of Gomez Trial Attorneys to represent her.

On March 3, 2022, attorney Kashou received an accident report he requested from the Imperial County Sheriff's Office. In referring to District's role in the accident, it stated that "two I.I.D. utility vehicles"—a "lead vehicle" followed by a "trailer"—were involved in the collision.

On April 22, 2022, attorney Kashou received a separate California Highway Patrol's accident report he requested. It specifically identified the "Imperial Irrigation District" as the vehicle's owner, its physical address in Imperial, California, and a District employee as the at-fault driver.

---

[1] Undesignated statutory references are to the Government Code.

[2] Buttner was an Imperial County jail inmate at the time of the accident. We deny her request for judicial notice of documents regarding her underlying criminal case because they are not necessary for our resolution of this appeal. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 295, fn. 21.)

On April 26, 2022, attorney Kashou, using a general claim form, filed a government tort claim against the State of California, which was mailed to a Sacramento, California address.

The May 30, 2022 six-month claim filing deadline passed without Buttner presenting a required government tort claim to District.

On June 17, 2022, Buttner filed a personal injury complaint against District in the Imperial County Superior Court.

On August 5, 2022, District served a demurrer on attorney Kashou in which it alleged Buttner had failed to comply with the deadline for presenting a claim under section 910 et seq. Buttner thereafter voluntarily dismissed her complaint.

On August 8, 2022, Buttner filed a government tort claim with Imperial County.

On August 15, 2022, Buttner filed a government tort claim with District, but it was denied as untimely.

Thereafter, Buttner filed an application with District to present a late claim under section 911.4, which District denied.

In December 2022, Buttner petitioned the superior court for relief from section 946.6's claim-filing requirements. She submitted attorney Kashou's supporting declaration, which specified the actions set forth above that he undertook to identify District as the tortfeasor, and the difficulties he faced in timely serving District with a tort claim. He declared that Buttner retained his law firm on or about December 17, 2021. By January 19, 2022, he had ascertained that a police report had been prepared. He obtained that police report on March 3, 2022, but it "failed to include any identifying information for the party involved in the accident." He declared that it was not until on or around April 22, 2022, after he received the California Highway Patrol's

3

report, that he learned District owned the vehicle. Recognizing that the deadline to comply with section 911.2 was quickly approaching, he "searched the [I]nternet for [District's] claim form but was unable to locate it on [District's] website. Calling [District] for help locating the claim form proved to be futile. Consequently, a general claim form for the State of California was completed and mailed it [*sic*] to the [Sacramento, California] address listed on the claim form on or about April 26, 2022."

Attorney Kashou stated that in July 2022, after the deadline for presenting a claim to District had lapsed, he communicated with District's counsel, who was initially helpful but later declined to assist him in locating an online form for filing a government tort claim with District. Attorney Kashou stated: "I eventually located the claim form for Imperial County, and I assumed—albeit incorrectly—that Imperial County and the Irrigation District fell within the same governmental agency. As such, on August 8, 2022, an amended claim was filled out and mailed to the address included on the claim form."

Following a hearing, the trial court denied Buttner's petition: "[She] has failed to offer evidence showing the reason that the claim was not mailed to the proper entity. Absent that showing, the court cannot find that the failure was due to mistake, inadvertence or excusable neglect." It found that as of March 3, 2022, when he received the sheriff's report that "indicated potential liability on the part of" District for the collision, attorney Kashou was on notice of District's potential liability.

The court stated: "[T]he question here is not whether [Buttner] exercised diligence in identifying the tortfeasor. Rather, the question is whether she has shown that her failure to *serve* the identified tortfeasor with a timely claim was due to mistake, inadvertence, or excusable neglect. In

4

this regard, the petition and evidence fail." It concluded: "The facts in support of the petition exist entirely in the declaration of Mr. Kashou; that declaration does not provide facts showing the reason that the claim was sent to a party not involved in the collision. It is clear that someone addressed the envelope containing the claim form; what is not shown is why it was addressed to the State of California. Mr. Kashou indicates that he mistakenly believed that [District] was part of the County of Imperial, but this only serves to beg the question of why the claim was sent to the State instead of the County or [District]. Under no version of the facts as they existed, including the belief of counsel at the time, was the State of California involved in the collision."[3]

The court denied Buttner's petition for reconsideration because she had not presented any new evidence. At the hearing on that motion, the court told attorney Kashou: "I just do not accept that you were unable to comply with the claim filing requirement. You just—if worse comes to worse, I mean, if you are looking at a statute running, you get in the car, you drive to [District] headquarters and you file a claim. I mean, so it's not like you were precluded. It was just you wanted, obviously, to do it via mail or some other method."

Attorney Kashou told the court: "And so if we send it to [District's physical address in Imperial County], not directed to the investigative committee at [District], there is no—who's to say that it was going to get routed to the right place anyway?" The court replied: "I don't know. Who is to say it wouldn't? What's the evidence? And, for goodness sake, why

---

[3] The court also ruled: "The opposing brief and declaration are not pertinent to this ruling, and [District's counsel] did not argue; therefore, the opposition papers are not considered."

5

wouldn't you just send it anyway?  Return receipt requested.  Send it, you get a return receipt."

DISCUSSION

Buttner contends the court abused its discretion in denying her petition under section 946.6.  She does not make separate arguments that she was entitled to relief based on mistake and also excusable neglect; instead, relying on attorney Kashou's declaration, she focuses on the issue of reasonable diligence, which she applies to both of those bases for relief.  We therefore also do not address mistake and excusable neglect separately.  Rather, we analyze whether the record shows that attorney Kashou engaged in reasonable diligence in discovering facts, or investigating and pursuing a claim, entitling Buttner to the relief sought.

I.  <em>Applicable Law</em>

Before filing a lawsuit seeking damages against a public entity, a party must present the claim to the public entity (§§ 905, 910, 945.4) within six months of the date of injury.  (§ 911.2, subd. (a).)  Otherwise, the injured party may apply to the public entity for leave to present a late claim (§ 911.4, subd. (a)), which must be submitted within one year of the date of injury "and shall state the reason for the delay in presenting the claim."  (§ 911.4, subd. (b).)  A timely application for leave must be granted if "[t]he failure to present the claim was through mistake, inadvertence, surprise or excusable neglect" and the public entity was not prejudiced by the delay.  (§ 911.6, subd. (b)(1).)

If the application for leave is denied, then within six months of the denial, the injured party may petition the trial court for an order relieving it from the prelitigation claim presentation requirement.  (§§ 945.4, 946.6, subds. (a) & (b).)  The petition must include "[t]he reason for failure to present the claim" within six months of the date of injury under section

6

911.2, subd. (a). (§ 946.6, subd. (b)(2).) The trial court must grant the petition for relief if, among other things, "[t]he failure to present the claim was through mistake, inadvertence, surprise, or excusable neglect." (§ 946.6, subd. (c)(1).) The trial court "make[s] an independent determination upon the petition," considering any evidence presented to it. (§ 946.6, subd. (e).)

This court has explained that to obtain relief under section 946.6, subdivision (c)(1), the mere recital of mistake, inadvertence, surprise or excusable neglect is not sufficient. Rather, such relief is available only on a showing that the claimant's failure to timely present a claim was reasonable: "Under the reasonably prudent person standard, '[e]xcusable neglect is that neglect which might have been the act of a reasonably prudent person under the circumstances.' [Citation.] When relief is sought based on mistake, because of the reasonably prudent person standard 'it is not every mistake that will excuse a default, the determining factor being the *reasonableness* of the misconception.' [Citation.] [¶] A showing of reasonable diligence is required to establish that the petitioner acted as a reasonably prudent person. When excusable neglect is claimed based on ignorance of a fact or failure to act on it, '[a] person seeking relief must show more than just failure to discover a fact until too late; or a simple failure to act. He [or she] must show by a preponderance of the evidence that in the use of reasonable diligence, he [or she] could not discover the fact or could not act upon it.' [Citation.] Similarly, when mistake is claimed, '[t]he party seeking relief based on a claim of mistake must establish he [or she] was diligent in investigating and pursuing the claim[.]' " (*N.G. v. County of San Diego* (2020) 59 Cal.App.5th 63, 73-74, fns. omitted.)

7

We review the denial of a petition for relief (§ 946.6) for abuse of discretion. (*Barragan v. County of Los Angeles* (2010) 184 Cal.App.4th 1373, 1382.)

## II. *Analysis*

Buttner was required to present her claim to District within six months from the date of the accident; thus, that deadline was May 30, 2022. (§§ 911.2, subd. (a), 900.4.) Instead, her petition was served on District on August 15, 2022, which was 75 days after the deadline had elapsed.

The trial court concluded that by March 3, 2022, when attorney Kashou had obtained the sheriff's accident report, Buttner and her counsel had actual knowledge of District's identity and its possible liability. We need not analyze the merits of that conclusion because even assuming that report did not contain sufficient information to put Buttner on notice of District's liability (because this report merely referred to "I.I.D." without identifying what those initials stood for), we would still conclude Buttner had sufficient time to present a claim. Specifically, attorney Kashou received the California Highway Patrol report on approximately April 22, 2022. That report stated the "Imperial Irrigation District" owned the at-fault vehicle, and its driver operated it. Attorney Kashou's declaration did not indicate what actions he or his representatives took to ascertain how to present a claim to District in the month between April 25, 2022, when he erroneously served the State of California, and May 30, 2022, when the six-month deadline for presenting the claim to District elapsed. But in those intervening almost five weeks, he had sufficient time and opportunity to serve District. No basis exists in the record for us to conclude that attorney Kashou exercised reasonable diligence. Rather, his inaction during those almost five weeks "in face of a tolling

8

statute seems to show inexcusable neglect." (*DeYoung v. Del Mar Thoroughbred Club* (1984) 159 Cal.App.3d 858, 865.)

Buttner argues attorney Kashou showed reasonable diligence in the days before the deadline elapsed, when he searched the Internet for a specific claim form for District, and subsequently, in August 2022, when he contacted District's counsel: "For several days, he searched the [I]nternet, placed telephone calls to [District] representatives, and reviewed the California Roster of Public Agencies for an entry with information about [District]. . . . His efforts proved futile, however, and Kashou was unable to find [a District-]specific claim form, leading him to assume—albeit erroneously—that [District] must be an agency of the State. . . . [¶] When Kashou learned that he had used an incorrect form and had mistakenly filed Buttner's claim with the incorrect entity, he took immediate steps to correct his mistake. . . . First, he sent an e[-]mail to [District's counsel] requesting his help. . . . Then, while awaiting [District's counsel's] response, he continued to search the [I]nternet for the proper form, even going so far as to file a second incorrect claim against the County of Imperial. . . . Over the course of a week, Kashou sent multiple e[-]mails to [District's counsel], several times reiterating his request for help in locating [District's] form. . . . And, when [he] sent the form, Kashou completed and mailed it the very same day."

This case is similar to *DeYoung v. Del Mar Thoroughbred Club, supra,* 159 Cal.App.3d 858, in which a representative of the racetrack where the potential plaintiff fell informed her that the track was solely responsible for the injury. This court held it was unreasonable for the claimant's counsel to interpret the statement of the track's representative as meaning no other entity had any responsibility for the injury. Rather, the claimant and her counsel should have conducted an independent investigation, as reliance on

9

an adversary's statement in the face of a statute of limitations is inexcusable neglect. (*Id.* at pp. 864-865.) Not every mistake excuses a default; it is "[t]he reasonableness of a misconception leading to the failure to timely file under section 911.2 [that] determines whether relief will be granted under section 946.6." (*DeYoung, supra,* 159 Cal.App.3d at p. 864.)

Here, too, it was unreasonable for attorney Kashou to rely on District's counsel to help him find the proper claim form to permit him to file a government claim against District. A remedial statute may not be utilized to obtain relief from a default which results from the unreasonable neglect of the party or from counsel's failure to fulfill his or her obligation to the client. (*Shank v. County of Los Angeles* (1983) 139 Cal.App.3d 152, 157.) We note that although attorney Kashou in his declaration emphasizes that he communicated with District's attorney at different times, their first contact occurred only after the deadline for presenting the claim to District had elapsed.

Buttner contends this case is analogous to *Bettencourt v. Los Rios Community College District* (1986) 42 Cal.3d 270 (*Bettencourt*), in which the plaintiffs' son drowned during a trip sponsored by Sacramento City College. (*Id.* at p. 273.) Upon being retained, the plaintiffs' attorney "immediately hired an investigator and commenced an investigation of the case." (*Id.* at p. 274.) The attorney presented the tort claim to "the State Board of Control under the mistaken belief that the employees of [the] College were employees of the State of California." (*Ibid.*) Approximately two months later, after the 100-day deadline for presenting the tort claim had passed, the attorney "learned that [the] College employees were employees of the Los Rios Community College District." (*Id.* at pp. 274-275.) The College District

denied the plaintiff's application for leave to file a late claim. The trial court denied the plaintiffs' petition for relief. (*Ibid.*)

The California Supreme Court reversed, reasoning that the attorney's assumption that the employees were State employees was reasonable because the attorney practiced in a different city 75 miles from Sacramento and was unfamiliar with District and the College. Moreover, the College District is overseen by the "Community College Board of Governors, whose members are appointed by the Governor," which could cause one to believe the community college's employees were State employees. (*Bettencourt, supra*, 42 Cal.3d at pp. 276-277.)

The California Supreme Court pointed out the attorney's "declaration did not explain why he assumed that Sacramento City College employees worked for the state or how he finally discovered his error. However, these omissions do not by themselves provide a proper basis for denying relief. Although counsel's declaration could have been more specific, any doubts must be resolved in favor of granting relief. [Citation.] To hold otherwise would, in effect, totally bar plaintiffs' wrongful death action and would therefore contravene the strong public policy favoring trial on the merits." (*Bettencourt, supra*, 42 Cal.3d at p. 280.)

Here, the trial court distinguished *Bettencourt, supra,* 42 Cal.3d 270, in which "plaintiff's counsel exercised reasonable diligence, but nevertheless was unable to identify the responsible governmental entity prior to the deadline for filing a claim. The instant case is different in that plaintiff's counsel *did* identify the responsible governmental entity, but thereafter failed to timely serve them with a tort claim." We agree with that conclusion.

We add that we cannot conclude attorney Kashou acted in reasonable diligence when he limited himself to filing a government tort claim with the

11

State of California instead of simultaneously filing a claim with District—which was specifically identified as the tortfeasor in the California Highway Patrol accident report. A " 'careful practitioner' would take the belt-and-suspenders approach." (*Simms v. Bear Valley Community Healthcare District* (2022) 80 Cal.App.5th 391, 398). According to attorney Kashou's declaration, after he received the two accident reports, he only conducted online research to find a claim form for District. But given that he knew District's address, he could have simply mailed a claim letter to District's address, or hired a courier to deliver such a letter. California case law has established that, "A claim has been presented to the public entity when the public entity 'receives a document which contains the information required by section 910 and is signed by the claimant . . . .' [Citation.] The information required by section 910 includes the 'date, place, and other circumstances of the occurrence or transaction which gave rise to the claim asserted' and '[a] general description of the . . . injury, damage or loss incurred so far as it may be known at the time of presentation of the claim.' [Citation.] . . . '[A] claim need not contain the detail and specificity required of a pleading, but need only "fairly describe what [the] entity is alleged to have done." ' [Citation.] Moreover, ' "[w]here there has been an attempt to comply [with the claims statute] but the compliance is defective, the test of substantial compliance controls." ' [Citation.] 'Substantial compliance contemplates that there is at least some compliance with all of the statutory requirements.' " (*Id.* at p. 400; accord, *Foster v. McFadden* (1973) 30 Cal.App.3d 943, 949 ["The letter under consideration accomplished the two principal purposes of a sufficient claim. It afforded [District] the opportunity to make a prompt investigation of the accident occasioning the letter and it gave to [District] the opportunity to settle without suit, if it so desired. [Citation.] We therefore hold that for the

purpose of invoking sections 910.8 and 911 of the Claims Act the letter should be treated as a claim"].)  Accordingly, Buttner's argument that she should be excused from the requirement of presenting a timely claim based on attorney Kashou's inability to find a claim form for District is unavailing.

DISPOSITION

The order is affirmed.  The Imperial Irrigation District is awarded costs on appeal.


O'ROURKE, Acting P. J.

WE CONCUR:


DATO, J.


KELETY, J.

13